UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CIARA GATER,
on behalf of J.G.,

      Plaintiff,                    Civil Action No. 17-12375
                                   Honorable Gershwin A. Drain
             v.              Magistrate Judge Elizabeth A. Stafford

Commissioner of
Social Security,

      Defendant.
_____/

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 20, 26]**

Plaintiff Ciara Gater, on behalf of her minor son J.G., appeals a final

decision of Defendant Commissioner of Social Security (Commissioner)

denying J.G.'s application for supplemental security income benefits (SSI)

under the Social Security Act. Both parties have filed summary judgment

motions, referred to this Court for a report and recommendation pursuant to

28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that

the administrative law judge's (ALJ) decision is supported by substantial

evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion [ECF No. 26] be **GRANTED**;

- Gater's motion [ECF No. 20] be **DENIED**; and

- the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

## I.   BACKGROUND

### A.   J.G.'s Background and Disability Application

Born in February 2005, J.G. was 9 years old when Gater filed an application for disability benefits on June 9, 2014.  [ECF No. 15-5, Tr. 181]. Gater alleged that J.G. is disabled by severe attention deficit hyperactivity disorder (ADHD), and that the onset date was the date of filing.  [ECF No. 15-2, Tr. 10; ECF No. 15-6, Tr. 218].  After a hearing on January 5, 2016, and a supplementary hearing on April 5, 2016, during both of which J.G. and Gater testified, the ALJ found that J.G. was not disabled.  [ECF No. 15-2, Tr. 10-28, 45-90].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Gater timely filed for judicial review.  [*Id.*, Tr. 1-3; ECF No. 1].

### B.   The ALJ's Application of the Disability Framework

A child under the age of 18 will be considered disabled if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

2

1382c(a)(3)(C)(i).  The Commissioner determines whether a child is

disabled by analyzing three sequential steps, assessing: (1) whether the

child is engaged in "substantial gainful activity"; (2) whether the child has

any "severe" impairments; and (3) whether the child's impairment or

combination of impairments meets, medically equals, or functionally equals

an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1

("Listings").  *See* 20 C.F.R. § 416.924(a); *Barnett ex rel. D.B. v. Comm'r of*

*Soc. Sec.*, 573 F. App'x 461, 462 (6th Cir. 2014).

In analyzing functional equivalence, the ALJ examines the effects of a

claimant's impairments on six behavioral domains: (1) acquiring and using

information, (2) attending and completing tasks, (3) interacting and relating

with others, (4) moving about and manipulating objects, (5) caring for

yourself, and (6) health and physical well-being.  *Barnett*, 573 F. App'x at

464; 20 C.F.R. § 416.926a(b)(1).  A claimant's impairments "functionally

equal the listings" if they result in "'marked' limitations in two domains" or

"an 'extreme' limitation in one domain."  § 416.926a(a).

Applying this framework, the ALJ concluded that J.G. was not

disabled.  At the first step, she found that J.G. had not engaged in

substantial gainful activity since the application date.  [ECF No. 15-2, Tr.

13].  Next, the ALJ determined that J.G. had the severe impairments of

3

ADHD, disruptive behavior disorder, and learning disorder.  [*Id.*].  At the third step, she concluded that J.G.'s impairment did not meet, medically equal, or functionally equal the severity of the listed impairments.  [*Id.*, Tr. 13-14].

In assessing the six functional equivalence domains, the ALJ found that J.G. had "less than marked" limitations in five domains (acquiring and using information, attending and completing tasks, interacting and relating with others, caring for yourself, and health and physical well-being) and "no limitation" in the remaining domain (moving about and manipulating objects).  [*Id.*, Tr. 22-27].  As a result, J.G. was found not disabled.  [*Id.,* Tr. 27].

## II.   ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241

4

(6th Cir. 2007) (internal quotation marks and citation omitted).

Gater argues that the ALJ erred in not considering Listing 112.05(D), "Intellectual Disability,"[1] and in finding that J.G. had "less than marked limitation" in the domains of "acquiring and using information" and "attending and completing tasks."  [ECF No. 20, PageID.1030-33, citing ECF No. 15-2, Tr. 22-24].  The Court finds that the ALJ's conclusions were supported by substantial evidence and recommends that the decision be affirmed.

## B.

"If the record raises a substantial question whether a claimant could qualify as disabled under a listing, an ALJ must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any listed impairment."  *Battaglini v. Comm'r of Soc. Sec.*, No. 4:15 CV 1454, 2016 WL 5232635, at *6 (N.D. Ohio Sept. 22, 2016).  But an error at step three is harmless if the claimant has not shown that his impairment meets or medically equals a listed impairment.  *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014).  Here, any error created by the

---

[1] Effective March 27, 2017, after the hearing date in this matter, Listing 112.05 was amended and no longer contains a separate "D" category. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

5

ALJ's failure to consider Listing 112.05(D) is harmless.

In order to meet Listing 112.05(D), which applies to intellectual disorders, a claimant must demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning," which are criteria found in the introductory clause of Listing 112.05; and "an IQ score between 60 and 70, and a physical or other mental impairment imposing an additional and significant limitation of function," which are criteria specified in section D. *Barnett*, 573 F. App'x at 463 (internal quotation marks and citations omitted); *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1. A claimant must meet all four criteria in order to be considered disabled under Listing 112.05(D). *Id.*

Gater presents evidence that J.G. meets the IQ score requirement for Listing 112.05(D), as he was assessed in March 2014 with a full scale IQ score of 62, and a 95% confidence interval of 58 to 68. [ECF No. 15-7, Tr. 356]. Demonstrating that J.G. meets the criterion requiring another impairment that poses an additional and significant limitation of function, Gater points to evidence of consistent ADHD diagnoses. [ECF No. 15-7, Tr. 313-318; ECF No. 15-9, Tr. 546, 557, 568, 579, 590, 612, 623; ECF No. 15-11, Tr. 919]. She notes that J.G. was deemed eligible for special education services due to his emotional and behavioral deficits, and

6

difficulty concentrating.  [ECF No. 15-7, Tr. 327-28, ECF No. 15-8, Tr. 507].

But in her opening brief, Gater failed to address the criteria set forth in the

introductory clause of Listing 112.05; her argument was insufficient as a

matter of law.  *See Fitzpatrick v. Comm'r of Soc. Sec.*, No. 1:16-CV-01,

2016 WL 7334842, at *6 (W.D. Mich. Dec. 19, 2016) (rejecting claimant's

Listing 112.05(D) argument because she "makes a cursory argument

noting the M.V.F. has an IQ score of 68, an additional impairment of ADHD,

and has problems with adaptive functioning, but makes no attempt to argue

M.V.F. suffers from significantly subaverage general intellectual

functioning.").  But after the Commission pointed out Gater's omission in its

brief, Gater attempted to show that J.G. met the introductory clause criteria

in her reply brief.  She still fell short.

As in initial matter, Gater's reply brief states that the evidence shows

that J.G. has "subaverage intellectual functioning," leaving out the modifier

"significantly."  [ECF No. 27, PageID.1070].  Gater must show that J.G.'s

intellectual functioning is *significantly* subaverage, and his low IQ scores,

alone, are not enough.  *Barnett*, 573 F. App'x 461 at 463.  Finding

otherwise would "collapse[ ] the Listing's first requirement (significantly

subaverage general intellectual functioning) into its third (an IQ score

between 60 and 70). It therefore runs afoul of the interpretive canon that

requires us to try to give meaning to every word in a statute or regulation." *Id.* In *Barnett*, although the claimant had low IQ scores, the record did not show that he had significantly subaverage intellectual functioning; he had not been diagnosed with mental retardation, and the psychological experts had concluded that his intellectual functioning was borderline. *Id.*

To evaluate the other criterion of the introductory clause, an ALJ must "identify significant deficits in adaptive functioning based on your dependence on others to care for your personal needs, such as eating and bathing." Listing 112.00(H)(3) (defining "deficits of adaptive functioning" under Listing 112.05). *See also West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (6th Cir. 2007) ("Adaptive functioning includes a claimant's effectiveness in areas such social skills, communication, and daily living skills.")

Arguing in her reply brief that J.G. suffers from subaverage general intellectual and deficits in adaptive functioning, Gater cites an April 2014 Individualized Educational Plan (IEP) which noted that J.G. "struggles with all core academic areas in the general education setting" and "is significantly behind in both reading and math." [ECF No. 15-7, Tr. 402-03]. The (IEP) also indicated that J.G. "has difficulty beginning an assignment and staying on task" and "is often talking out or making noises at his seat,

8

which prevents him from comprehending new material and completing

work."  [*Id.*].  Gater further cites a social worker's report from March 2014

stating that J.G. has "a school history of academic and behavioral

struggles," "has significant challenges in the areas of Inattention, Leaning

Problems, Executive Functioning, Aggression and Peer Relations," and

"engages in work avoidance by becoming oppositional and not responding

to teacher direction."  [*Id.*, Tr. 425].   These documents evidence behavioral

deficits and difficulty concentrating, but not significantly subaverage general

intellectual functioning.  And neither J.G.'s special education interventions

nor reports that he performed below grade average mean that he meets

Listing 112.05(D).  *Eddy v. Comm'r of Soc. Sec.*, 506 F. App'x 508, 510

(6th Cir. 2012) (evidence that claimant attended special education classes

and quit school after the eighth grade was insufficient because claimant

"did not show that her enrollment in special education classes or her failure

to continue her schooling were due to her having significantly subaverage

general intellectual functioning.").

Of further import, although the ALJ did not specifically analyze Listing

112.05(D), she did address evidence in the record that undermines Gater's

argument, including the September 2014 consultative examination done by

Julia A. Czarnecki, M.A., and Nick Boneff, Ph.D., a licensed psychologist.

9

[ECF No. 15-2, Tr. 18, 23].  They found that he was "cooperative, polite, in touch with reality," and had adequate attention and concentration, though he occasionally needed some mild redirection.  [ECF No. 15-7, Tr. 344]. He had a bright affect and a cheerful, talkative, and friendly mood.  [*Id.*]. He also completed simple arithmetic problems and identified six colors, four shapes, and all of the letters of the alphabet.  [ECF No. 15-2, Tr. 18, 23, citing ECF No. 15-7, Tr. 345].  Czarnecki and Dr. Boneff concluded that he "should be able to function appropriately in his current school and social settings."  [*Id.*, Tr. 345].

For a prior disability claim, J.G.'s records were assessed by Muhammad Khalid, M.D., and Zahra Yousuf, M.D., in January 2012.  [ECF No. 15-3, Tr. 91-99].  They found that he did not meet, medically equal, or functionally equal any listing.  [*Id.*, Tr. 95].  They also found that J.G. had "less than marked" limitations in "acquiring and using information" and "attending and completing tasks," which was based on J.G.'s test scores, grade level, improvements on medication, and behavior during consultative examination.  [*Id.*, Tr. 95-96].  For the present claim, Dr. Yousuf again considered the medical record and rendered an opinion in September 2014.  [*Id.*, Tr. 101-108].  She found that no listing was met and that there was no medical or functional equivalence to a listing.  [*Id.*, Tr. 105].  She

10

also found less than marked limitations in "acquiring and using information"
and "attending and completing tasks," based on the evidence in the record.
[*Id.*, Tr. 105].  Dr. Yousuf gave great weight to Czarnecki and Dr. Boneff's
September 2014 opinion, and opined that J.G.'s interactions with others
and limited social skills do not interfere with learning to the extent alleged.
[*Id.*, Tr. 106].

Regarding adaptive functioning, the ALJ determined that J.G. had
less than marked deficits in his abilities to interact and relate with others,
and to care for himself.  [ECF No. 15-2, Tr. 25-26].  Gater's motion does
not challenge these findings, [*see* ECF No. 20, PageID.1030-33], and these
findings undermine Gater's argument that J.G. has significant deficits in
adaptive functioning.  Listing 112.00(H)(3) (significant deficits in adaptive
functioning found when claimant is dependent on others to care for
personal needs); *West,* 240 F. App'x at  698 ("Adaptive functioning includes
a claimant's effectiveness in areas such social skills, communication, and
daily living skills.")

The ALJ "need not discuss listings that the applicant clearly does not
meet, especially when the claimant does not raise the listing before the
ALJ," as was the case here.  *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x
639, 641 (6th Cir. 2013).  And any error would be harmless since Gater has

not met her burden of demonstrating that she satisfies all of the criteria of Listing 112.50(D). *Miller v. Comm'r of Soc. Sec.*, 848 F. Supp. 2d 694, 708 (E.D. Mich. 2011).

## C.

As noted above, a finding of functional equivalency to a listing is dictated if a claimant's impairments result in marked limitations in two of the six listed behavioral domains. § 416.926a(a). Gater argues that J.G. had marked limitations in the domains of "acquiring and using information and "attending and completing tasks," whereas the ALJ found less than marked limitations in these and other domains.  [ECF No. 15-2, Tr. 22-24].

### *1. Acquiring and Using Information*

A marked limitation is found when "your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities.  Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities."  § 416.926a(e)(2)(i). Examples of "limited functioning" in acquiring and using information—but not necessarily "'marked' or 'extreme' limitation[s]"—include inability to understand words about space, size, or time (e.g., in/under, big/little, morning/night); inability to rhyme words or the sounds in words; difficulty

12

recalling important things learned in school yesterday; difficulty solving mathematics questions or computing arithmetic answers; and talking only in short, simple sentences and having difficulty explaining what you mean.  § 416.926a(g)(3).

In finding that J.G. was limited to a less than marked degree in acquiring and using information, the ALJ noted that Gater attested to his ability to "play video games, watch television, solve puzzles, and read at home."  [ECF No. 15-2, Tr. 23, citing ECF No. 15-6, Tr. 224].  The ALJ also noted J.G.'s ability to identify shapes, colors, and letters during his consultative examination with Dr. Boneff.  [ECF No. 15-2, Tr. 23, citing ECF No. 15-7, Tr. 345].  She cited Dr. Boneff's opinion that J.G. "should be able to function appropriately in his current school and social setting" as well, and afforded this opinion significant weight earlier in the decision.  [*Id.*; ECF No. 15-2, Tr. 21].  And after considering J.G.'s treatment records, she concluded that "with compliance to his medication and treatment, his symptoms have improved and only occurred *intermittingly*."  (emphasis in original).  [ECF No. 15-2, Tr. 23].  The records cited by the ALJ support this conclusion.  [ECF No. 15-9, Tr. 539, 550, 561, 572, 583, 594, 605, 616 (frequency of symptoms "intermittent" and symptoms currently "improving"); ECF No. 15-10, Tr. 744 ("intermittent" symptoms, currently "improving," and

13

"doing well, no major problems"); ECF No. 15- 11, Tr. 919 ("mood stable on medications")].  In addition, the ALJ afforded great weight to the 2014 opinion of Dr. Yousuf, who reviewed J.G.'s records and opined that his ability to acquire and use information was less than markedly impaired. [ECF No. 15-3, Tr. 105, citing ECF No. 15-7, Tr. 403-05].

Gater argues that the ALJ's conclusion was flawed, citing a teacher questionnaire filled out by Charles Danlor in November 2015.  [ECF No. 20, PageID.1031-32].  Danlor had known J.G. for three months when he completed the questionnaire, and interacted with J.G. for ten hours each week.  [ECF No. 15-6, Tr. 247].  Danlor assessed J.G.'s problems as "very serious" in all activities relating to the "acquiring and using information" domain.  [*Id.*, Tr. 248].  He opined that J.G. had severe difficulty retaining information, difficulty remembering the first step of a set of instructions, and could rarely complete a task on the first request.  [*Id.*].

The ALJ afforded "limited weight" to Danlor's opinion in its entirety, finding it inconsistent with "the pattern of evidence contained in the record." [ECF No. 15-2, Tr. 20].  The longitudinal record of medical evidence from 2014 to 2016 demonstrating intermittent and improving symptoms, and the consultants' opinion that J.G. was able to function appropriately, constitute substantial evidence to support the determination that J.G. had a less than

14

marked limitation.  Danlor's opinion, proffered after only three months of familiarity with J.G., does not provide a sufficient reason to disturb the ALJ's decision.

### 2. Attending and Completing Tasks

Deficiencies in attending and completing tasks are shown when a child is "easily startled, distracted, or overreactive to sounds, sights, movements, or touch"; is slow to focus on or fails to complete activities of interest (e.g., games or art projects); repeatedly becomes sidetracked from activities or frequently interrupts others; is easily frustrated and gives up on tasks, including ones he or she is capable of completing; and requires extra supervision to stay engaged in an activity. § 416.926a(h)(3).

In finding that J.G.'s limitation in attending and completing tasks was less than marked, the ALJ noted that treatment records revealed J.G.'s memory and concentration to be intact.  [ECF No. 15-2, Tr. 24, citing ECF No. 15-9, Tr. 619; ECF No. 15-11, Tr. 809, 842, 856, 938 (reflecting normal results in appearance, attitude, behavior, speech, affect, mood, thought processes and content, perception, orientation, and memory/concentration)].  He also showed strengths in using computers and participating in small groups.  [ECF No. 15-11, Tr. 895].  And again, Dr. Yousuf opined that J.G. had less than marked limitations in this domain

15

based on her review of the evidence, including J.G.'s bright affect; cheerful, talkative, and friendly mood; and cooperative nature during the consultative examination. [ECF No. 15-3, Tr. 105, citing ECF No. 15-7, Tr. 344].

Gater notes that Danlor's teacher questionnaire assessed J.G. with a "serious" or "very serious problem" in twelve of the thirteen activities associated with "attending and completing tasks." [ECF No. 15-6, Tr. 249]. Danlor opined that J.G. "rarely completes daily assignments," and requires "one-on-one assistance to add or subtract single digit numbers with 100% accuracy." [*Id.*]. "He distracts other students in the class and may even talk to himself at times." [*Id.*]. But the ALJ gave limited weight to this opinion, and Gater offers little evidence to support it. She cites an individualized education program report from over a year prior to Danlor's opinion, which stated that J.G. was "significantly behind in both reading and math," "has difficulty beginning an assignment and staying on task," and "is often talking out or making noises at his seat." [ECF No. 15-7, Tr. 402-03]. And she references the "Conners 3 ADHD Assessment" that indicated significant challenges in the areas of "inattention, learning problems, executive functioning, aggression, and peer relations." [*Id.*, Tr. 425]. But the ALJ found that, although J.G. had significant problems when he was not compliant with his medication, his mental status examinations generally

16

showed his concentration to be adequate.   [ECF No. 15-2, Tr. 24, citing ECF No. 15-11, Tr. 919-21].

The ALJ thus cited substantial evidence to find that J.G. had less than marked limitations in attending and completing tasks; she cited a broad range of medical treatment records, Dr. Yousuf's opinion (which was based on a review of the record), and the consultants' examination of J.G. Danlor's contrary opinion is an insufficient basis to reverse the ALJ's decision.  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) ("If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.") (internal citations omitted).

## III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Gater's Motion for Summary Judgment [ECF No. 20] be **DENIED**, the Commissioner's Motion [ECF No. 26] be **GRANTED**, and the ALJ's decision **AFFIRMED**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: August 13, 2018

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Gater v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection

must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains.  Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to

the objections, specifically addressing each issue raised in the objections in

the same order and labeled as "Response to Objection #1," "Response to

Objection #2," etc.  The response must be **concise and proportionate in**

18

**length and complexity to the objections**, but there is otherwise no page

limitation.  If the Court determines that any objections are without merit, it

may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

 The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 13, 2018.

<u>s/Marlena Williams</u>
MARLENA WILLIAMS
Case Manager

19